## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| NANDITA VANKA, | ) | CIVIL ACTION FILE |
| | ) | NO.: _____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| EMORY UNIVERSITY and THE | ) | |
| CARTER CENTER, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

Plaintiff Nandita Vanka ("Plaintiff" or "Ms. Vanka") files this Complaint against Emory University ("Emory") and The Carter Center ("TCC") (collectively the "Defendants"), showing the Court as follows:

### INTRODUCTION

1.     Ms. Vanka is a former employee of Defendants, having worked for Defendants from October 1, 2015 to September 13, 2024.

2.     This is an action against Emory and TCC jointly for race, national origin, and alienage discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, ("Title VII") and 42 U.S.C. § 1981; failure to accommodate, disability discrimination, disability interference, and retaliation under the Americans with Disabilities Act, as amended by the Americans with

1

Disabilities Act Amendments Act of 2008, 42 U.S.C. §12101 *et seq.* ("ADA"); and interference and retaliation  under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*.

3.    Ms. Vanka seeks injunctive and declaratory relief, back pay and lost benefits, front pay or reinstatement to a full-time position with commensurate benefits, compensatory and punitive damages, liquidated damages, and attorney's fees and costs of litigation.

### JURISDICTION AND VENUE

4.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

5.    Venue is proper in this district and division under 28 U.S.C. § 1391 because Defendants Emory and TCC conduct business in this district and division and the unlawful actions and practices alleged herein were committed within the Northern District of Georgia.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.    On May 5, 2024, Ms. Vanka timely filed a charge of discrimination against Emory University - Charge No. 410-2025-01532 – with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains. with the EEOC.

7.    On May 5, 2024, Ms. Vanka timely filed a charge of discrimination

against The Carter Center - Charge No. 410-2025-01531 – with the Equal Employment Opportunity Commission within 180 days of the occurrence of the acts of which she complains. with the EEOC.

8.   Ms. Vanka received her Determination and Notice of Rights on April 4, 2025, related to her Charge against Emory, 410-2025-01532.

9.   Ms. Vanka received her Determination and Notice of Rights on May 28, 2025, related to her Charge against TCC, 410-2025-01531.

10.   Ms. Vanka brings this suit within ninety (90) days of receipt of her Dismissals and Notice of Rights and, thus, exhausts her administrative remedies.

## PARTIES

11.   Ms. Vanka is a citizen of the United States and a resident of the State of Georgia and submits herself to the jurisdiction of this Court.

12.   Ms. Vanka is of Indian and South Asian origin.

13.   At all times relevant to this Complaint, Ms. Vanka was an "employee" within the meaning of Title VII.

14.   Ms. Vanka is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

15.   Ms. Vanka is a person with a disability because she has actual impairments – autoimmune dysfunction, Celiac disease, and irritable bowel syndrome – causing substantial limitations of her major bodily functions

including her immune and digestive systems, because she has a record of impairment, and because Defendants regarded her as having an impairment.

16.    Ms. Vanka is capable of performing the essential functions of her job as Senior Program Associate with or without accommodation.

17.    Ms. Vanka is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

18.    Ms. Vanka suffers from serious health conditions as defined by the FMLA including autoimmune dysfunction, Celiac disease, and irritable bowel syndrome.

19.    Ms. Vanka has been employed by Defendants for more than 12 months and worked more than 1250 hours in the 12 months preceding her serious health condition.

20.    Defendant Emory is an "employer" as defined by Title VII and the ADA.

21.    Defendant TCC is an "employer" as defined by Title VII and the ADA.

22.    Defendants Emory and TCC are employers engaged in in commerce or in an industry affecting commerce within the meaning of Title VII and the ADA and have each employed more than 15 persons for each working day in each of 20 calendar weeks in the current or preceding calendar year.

23.     Defendant Emory is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

24.     Defendant TCC is an "employer" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq.*

25.     Defendants Emory and TCC had more than 50 employees within a 75-mile radius of the location at which Ms. Vanka was employed in each of 20 or more consecutive calendar weeks in the current or preceding year with the meaning of 29 U.S.C. § 2601 *et seq.*

26.     Defendant Emory is a domestic private university conducting business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.

27.     Emory may be served with process by serving its registered agent for service of process, Amy Adelman, at 201 Dowman Drive, 312 Administration Building, Atlanta, Georgia 30322.

28.     Defendant TCC is a nonprofit corporation doing business in the State of Georgia and is, therefore, subject to personal jurisdiction in Georgia.

29.     TCC may be served with process by serving its registered agent for service of process, Paige Alexander, 453 John Lewis Freedom Parkway, Atlanta, Georgia 30307.

### STATEMENT OF FACTS

30.     Ms. Vanka, who is of Indian and South Asian descent began her joint

5

employment with TCC and Emory on October 1, 2015.

31.    On May 10, 2023, Ms. Vanka was promoted to Senior Program Associate in the Rule of Law Program in the Office of the Vice President for Peace, reporting directly to Rule of Law Program Director Victoria Ayer and indirectly to Laura Neuman.

32.    Despite the reporting structure, Ms. Vanka reported almost exclusively to Ms. Neuman throughout the duration of her time in this role.

33.    Ms. Ayer told Ms. Vanka in one of their first meetings that if she had any issues at all while working with Ms. Neuman, to please let her know right away.

34.    Ms. Neuman is widely believed by employees of color at TCC to be a racist and to treat employees of color worse than their white counterparts.

35.    Ms. Vanka was the only person of color on her team.

36.    As a Senior Program Associate, Ms. Vanka worked on the Inform Women, Transform Lives campaign.

37.    Throughout her time working with Ms. Neuman, Ms. Neuman sabotaged Ms. Vanka's work.

38.    Ms. Vanka has a history of autoimmune dysfunction, Celiac disease, and irritable bowel syndrome.

39.    Ms. Vanka's disabilities substantially limit her major bodily functions

including her immune and digestive systems.

40.    Ms. Vanka' disabilities are exacerbated by stress and her work environment under Ms. Neuman was exacerbating her disabilities.

41.    Ms. Vanka is capable of performing the essential functions of her job with an accommodation.

42.    On July 1, 2023, Ms. Vanka requested a reasonable accommodation, to work remotely from Portland, Oregon, for her ADA-covered disabilities so that she could seek treatment from her provider who was located on the west coast.

43.    Then TCC Human Resources Director Sabrina Burnett asked Ms. Vanka not to share her disabilities with Ms. Neuman and directed her to only share it with Ms. Ayer.

44.    Ms. Vanka shared her disabilities with Ms. Neuman anyway.

45.    In August 2023, Ms. Vanka worked remotely from Portland, Oregon as an accommodation for her disabilities.

46.    Ms. Neuman was resentful of Ms. Vanka's need for accommodation and made her resentment known.

47.    Ms. Vanka returned to in person work at TCC in September 2023.

48.    In September 2023, Ms. Vanka's project was moved to the Office of the Vice President for Peace reporting directly to Christopher Hobbs and continued to report indirectly to Laura Neuman.

49.    In December 2023, Ms. Vanka reported to Mr. Hobbs that she was being targeted and mistreated by Ms. Neuman, that she was being treated disparately than her colleagues who were all Caucasian, and that Ms. Neuman was difficult to work with.

50.    Also in December 2023, Ms. Vanka told Ms. Neuman that she was struggling to work with her due to feeling regular hostility towards her by Ms. Neuman.

51.    Ms. Vanka asked Ms. Neuman what she could do to facilitate an effective working relationship for the good of their project.

52.    Mr. Hobbs took no action on Ms. Vanka's complaints and Ms. Neuman and Mr. Hobbs began retaliating against Ms. Vanka for making the complaints.

53.    In January and February 2024, Ms. Vanka had biweekly meetings with Mr. Hobbs during which Mr. Hobbs shared that Ms. Neuman was allegedly unhappy with Ms. Vanka and in which Mr. Hobbs shared false information provided by Ms. Neuman about Ms. Vanka's performance and deliverables.

54.    Ms. Vanka routinely provided documentation to Mr. Hobbs supporting the fact that Ms. Neuman was making false allegations about Ms. Vanka's performance and achievement of her deliverables.

55.    Ms. Vanka also reiterated to Mr. Hobbs that she continued to feel

disrespected, targeted, and mistreated on a daily basis during her interactions with Ms. Neuman.

56.    Mr. Hobbs then asked Ms. Vanka to copy him on all email communication between her and Ms. Neuman.

57.    On March 7, 2024, Mr. Hobbs presented Ms. Vanka with a draft Performance Improvement Plan ("PIP") based on false information provided by Ms. Neuman.

58.    Mr. Hobbs pressured Ms. Vanka to immediately sign the PIP without allowing her time to review the document.

59.    Ms. Vanka signed the document but identified that she did so pending review of the PIP.

60.    On March 11, 2024, the PIP officially began.

61.    Ms. Vanka asked Ms. Allen whether she was eligible for a transfer while she was actively on a PIP.

62.    On March 13, 2024, Ms. Allen responded to Ms. Vanka that "Emory has advised that staff are not eligible for transfer to another position within Emory/TCC while on an active PIP."

63.    On March 12, 2024, because the PIP was completely fabricated, Ms. Vanka rescinded her PIP signature by email.

64.    On March 21, 2024, Ms. Vanka provided TCC Human Resources

Director Laynea Allen a thorough rebuttal to the PIP including documentation establishing that Neuman and Hobbs fabricated the information set forth in the PIP.

65.    Ms. Allen told Ms. Vanka that TCC would not respond to the rebuttal and that Ms. Vanka did not have to agree with the PIP for the PIP to be active.

66.    Although Ms. Allen told Ms. Vanka that her rebuttal would be placed with the PIP in her personnel file, when Defendants provided the PIP to the EEOC, they did not include Ms. Vanka's thorough and well documented rebuttal.

67.    On April 1, 2024, Ms. Vanka met with Ms. Allen and shared with her that she believed she was being targeted and bullied by Ms. Neuman because of her race, national origin, and disability.

68.    Ms. Vanka also shared with Ms. Allen that a number of other TCC staff had shared with Ms. Vanka that they believed that were discriminated against by Ms. Neuman because they are not white.

69.    Ms. Allen shared with Ms. Vanka that she was required to escalate Ms. Vanka's concerns to Emory because discrimination was raised by Ms. Vanka and not just conduct issues.

70.    Ms. Allen told Ms. Vanka that she would contact Niger Thomas at Emory's Office of Equity and Inclusion to provide them with a heads up that Ms. Vanka brought forth a complaint and that report was forthcoming.

71.    On April 11, 2024, Ms. Vanka emailed an official report of race,

national origin, and disability discrimination and retaliation to Mr. Thomas and told both Barbara Snith and Ms. Allen that she was doing so

72.    On April 19, 2024, Ms. Vanka's PIP was to conclude, but neither Ms. Allen or Mr. Hobbs would confirm to Ms. Vanka that it had.

73.    On April 24, 2024, Mr. Hobbs submitted a review of Ms. Vanka performance on the PIP and extended the PIP conclusion to May 8, 2024.

74.    Part of the stated reason that Mr. Hobbs extended the PIP was because of Ms. Vanka's need to occasionally miss work for her serious health conditions/disabilities when she was suffering from flare ups.

75.    On April 24, 2024, Ms. Vanka had her mid-year review with Mr. Hobbs.

76.    Mr. Hobbs verbally attacked and intimidated Ms. Vanka, and he stormed out of the mid-year review.

77.    This was the second meeting during the PIP period that Mr. Hobbs ended early when Ms. Vanka calmly disputed false allegations about her work and character.

78.    Ms. Vanka reported his retaliatory misconduct to Ms. Allen.

79.    On April 25, 2024, Ms. Vanka was removed from Mr. Hobb's supervision and was reassigned to report to Vice President of Peace Programs Barbara Smith.

80.    On April 26, 2024, Ms. Vanka met with Ms. Smith and was told that she would no longer report to Mr. Hobbs and instead would report to Ms. Smith.

81.    Ms. Smith offered Ms. Vanka a formal apology for Mr. Hobbs' misconduct in the mid-year evaluation meeting and said it was not acceptable.

82.    Ms. Smith thanked Ms. Vanka for her years of work with the DRC team, in Conscious Connections, and with the IWTL campaign.

83.    Ms. Smith told Ms. Vanka she was well known as a leader at TCC.

84.    Ms. Smith implied to Ms. Vanka that she would assist her in remaining employed by TCC.

85.    Ms. Vanka shared with Ms. Smith that she would like a transfer because she had a lot to contribute to TCC but Mr. Hobbs and Ms. Neuman were not interested in seeing Ms. Vanka succeed.

86.    Ms. Vanka shared with Ms. Smith that she had been interviewed by the Democracy Program and they had several Senior Program Associate positions available.

87.    Ms. Vanka also shared with Ms. Smith that  she had met with other TCC women of color and listened to their stories in order to answer Ms. Smith's question on how to make TCC a place where people of color feel equally safe.

88.    Ms. Vanka mentioned to Ms. Smith that she was shocked by these women's experiences of being called incompetent and being treated unfairly.

89.     Ms. Vanka shared with Ms. Smith suggestions for improving the culture at TCC: DEI training for senior leadership and management; a listening exercise to understand the patterns and pain points for employees of color (with a commitment to change, as asking people to be vulnerable and doing nothing with that information would deepen frustrations /distrust, and providing opportunities for advancement and mentorship so that employees of color can actually advance at an equal rate in the institution.

90.     Ms. Smith thanked Ms. Vanka for these suggestions and asked permission to share Ms. Vanka's concerns and suggestions with the new DEI Manager that was being hired by TCC.

91.     Throughout her subsequent meetings with Ms. Smith, Ms. Smith continued to praise Ms. Vanka's work and never expressed a single concern with Ms. Vanka's work.

92.     Ms. Smith was amicable in her meetings with Ms. Vanka.

93.     Ms. Smith continued to reply positively to Ms. Vanka's daily check-in and summary of accomplishment emails during the last two weeks of the PIP and never shared with Ms. Vanka that she was not on track to complete the PIP successfully.

94.     Also in April 2024, Ms. Vanka notified Human Resources and her department she was seeking FMLA because her serious health condition was

worsening due to the discriminatory treatment and associated stress she was experiencing.

95.    Ms. Vanka requested, and was approved to work remotely, in order to see providers and file FMLA paperwork.

96.    On April 30, 2024, Ms. Vanka met with Porscha Smith-Godwin, Emory's Director of Employee Relations, and shared all of her concerns regarding the culture at TCC and Ms. Vanka's retaliatory and discriminatory treatment by Ms. Neuman and Mr. Hobbs.

97.    Days after making complaints about discrimination to Ms. Smith-Godwin, Ms. Vanka was told she had "investigated" her concerns and they were invalid.

98.    On May 10, 2024, Ms. Vanka escalated her complaints about disability, race/national origin discrimination and retaliation to Emory's Office of Ethics and Compliance.

99.    On May 13, 2024, Ms. Vanka was told by Ms. Allen and Ms. Godwin-Smith she was being terminated from her position and placed on a 30-day paid administrative leave.

100.    Ms. Vanka was told if she did not find a new job by the end of the 30-day period, she would get a severance package, which did not happen.

101.    Ms. Vanka was terminated during the process of obtaining FMLA

paperwork from her doctor to submit it to Emory.

102.   Despite being notified she was terminated, Ms. Vanka was granted medical leave under the FMLA.

103.   On September 13, 2024, Ms. Vanka was terminated and not offered severance as she was originally told she would be.

104.   In terminating Ms. Vanka, TCC and Emory discriminated against Ms. Vanka because of her race/national origin; her disability, failed to accommodate her disability, and retaliated against Ms. Vanka for engaging in protected activity under Title VII and the ADA.

105.   The effect of TCC's and Emory's above-stated actions has been to deprive Ms. Vanka of employment opportunities, income in the form of wages, and prospective employment benefits,  to which she was entitled but for Emory's and TCC's illegal actions.

106.   The actions taken against Ms. Vanka by Defendants have caused her to suffer both monetary and non-monetary damages.

107.   Pursuant to the Title VII, 42 U.S.C. § 1981, the ADA, and the FMLA, Ms. Vanka is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory/emotional damages, punitive damages, liquidated damages, and attorney's fees and costs of litigation.

## COUNT I
## Race/National Origin Discrimination in Violation of Title VII

108.   Ms. Vanka incorporates by reference all preceding paragraphs of the Complaint.

109.   Ms. Vanka was discriminated against by Defendants based on her race/national origin when they subjected her to a hostile work environment, placed her on a contrived PIP that prohibited her from transferring to another department, and terminated her employment while not subjecting her white colleagues to the same conduct.

110.   Ms. Vanka suffered some harm as a result of Defendants' discriminatory conduct.

111.   Ms. Vanka's race/national origin was a motivating factor in the harm to which Ms. Vanka was subjected.

112.   Defendants' stated reason for terminating Ms. Vanka is pretext for racial discrimination.

113.   Ms. Vanka presents a convincing mosaic of circumstantial evidence supporting her race/national origin discrimination claims.

114.   Defendants' discriminatory treatment of Ms. Vanka violated Title VII.

115.   Defendants acted with malice towards Ms. Vanka.

116.   Additionally, and in the alternative, Defendants acted with reckless disregard for Ms. Vanka's federally protected rights.

117.   As a direct and proximate result of Defendants' actions, Ms. Vanka has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

118.   Pursuant to Title VII, Ms. Vanka is entitled to damages including back pay and lost benefits, front pay, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under Title VII.

## COUNT II
## Race Discrimination in Violation of 42 U.S.C. § 1981

119.   Ms. Vanka incorporates by reference all preceding paragraphs of the Complaint.

120.   42 U.S.C. § 1981's prohibition on race discrimination in the making or enforcement of contracts applies to Ms. Vanka's employment contract with Defendants.

121.   Ms. Vanka was discriminated against by Defendants based on her race/national origin when they subjected her to a hostile work environment, placed her on a PIP that prohibited her from transferring to another department, and terminated her employment while not subjecting her white colleagues to the same conduct.

122.   Defendants' stated reason for terminating Ms. Vanka's employment is pretext for racial discrimination.

123.   Ms. Vanka presents a convincing mosaic of circumstantial evidence supporting her race/national origin discrimination claims.

124.   Ms. Vanka's termination of Ms. Vanka violated 42 U.S.C. § 1981.

125.   Defendants acted with malice towards Ms. Vanka.

126.   Additionally, and in the alternative, Defendants acted with reckless disregard for Ms. Vanka's federally protected rights.

127.   As a direct and proximate result of Defendants' actions, Ms. Vanka has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

128.   Ms. Vanka is entitled to damages including back pay and lost benefits, front pay, compensatory damages, punitive damages, attorneys' fees and costs of litigation pursuant to 42 U.S.C. §1988, and all other relief recoverable under Section 1981.

## COUNT III
## Retaliation in Violation of Title VII

129.   Ms. Vanka incorporates by reference all preceding paragraphs of the Complaint.

130.   Ms. Vanka engaged in protected activity under Title VII by making internal complaints to Emory/TCC alleging race/national origin discrimination.

131.   Emory/TCC extended Ms. Vanka's PIP, terminated her employment, and denied Ms. Vanka severance in retaliation for engaging in protected activity under Title VII.

132.   Emory's and TCC's actions, in subjecting Ms. Vanka to retaliation for engaging in protected activity by complaining of, and opposing, race and national origin discrimination, constitute unlawful intentional retaliation in violation of Title VII.

133.   Emory/TCC willfully and wantonly disregarded Ms. Vanka's rights, and Emory's/TCC's retaliation against Ms. Vanka was undertaken in bad faith.

134.   As a result of Emory's/TCC's unlawful actions, Ms. Vanka has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

135.   Pursuant to Title VII, Ms. Vanka is entitled to damages, including back pay and lost benefits, front pay and/or rehiring to a Senior Program Associate position, compensatory damages, punitive damages, attorney's fees and costs of litigation.

## COUNT IV
## Retaliation in Violation of 42 U.S.C. § 1981

136.   Ms. Vanka incorporates by reference all preceding paragraphs of the Complaint.

137.  Ms. Vanka engaged in protected activity under 42 U.S.C. § 1981 by making internal complaints to Emory/TCC alleging race discrimination.

138.  Emory's/TCC extended Ms. Vanka's PIP, terminated her employment, and denied Ms. Vanka severance in retaliation for engaging in protected activity under 42 U.S.C. § 1981.

139.  Emory's/TCC's actions, in subjecting Ms. Vanka to retaliation for engaging in protected activity by complaining of, and opposing, race/national origin discrimination, constitute unlawful intentional retaliation in violation of § 1981.

140.  Emory/TCC willfully and wantonly disregarded Ms. Vanka's rights, and Emory's/TCC's retaliation against Ms. Vanka was undertaken in bad faith.

141.  As a result of Emory's/TCC's unlawful actions, Ms. Vanka has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

142.  Pursuant to § 1981, Ms. Vanka is entitled to damages, including back pay and lost benefits, front pay and/or rehiring to a Senior Program Associate position, compensatory damages, punitive damages, attorney's fees and costs of litigation.

## COUNT V
## <u>Violation of ADA – Regarded as Disabled</u>

143.  Ms. Vanka incorporates by reference all preceding paragraphs of the Complaint.

144.  At all times relevant hereto, Defendants were subjected to the Requirements of Title I of the ADA.

145.  At all times relevant hereto, Ms. Vanka was an individual with a disability as defined under the ADA, 42 U.S.C. § 12102(1)(C), because Defendants regarded her as a person with an impairment as defined by the Act.

146.  Moreover, at all times relevant hereto, Ms. Vanka has been a qualified individual as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

147.  Defendants terminated Ms. Vanka because they regarded her as disabled under the ADA.

148.  Defendants' action in terminating Ms. Vanka because of her disability violated section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

149.  Defendants acted with malice towards Ms. Vanka.

150.  Additionally, and in the alternative, Defendants acted with reckless disregard for Ms. Vanka's federally protected rights.

151.  As a direct and proximate result of Defendants' intentional discrimination, Ms. Vanka has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages, all in an amount to be established at trial.

152.  Ms. Vanka is entitled to damages including backpay and lost benefits, front pay and/or reinstatement, compensatory damages, punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

153.  Defendants' actions have also caused and continue to cause Ms. Vanka to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

154.  Accordingly, Ms. Vanka is entitled to equitable and monetary relief for Defendants' violation of his rights under the ADA.

## COUNT VI
## Violation of ADA – Actual Discrimination, Failure to Accommodate

155.  Ms. Vanka incorporates by reference all the preceding paragraphs of the Complaint.

156.  At all times relevant to this action, Defendants were subject to the requirements of the ADA.

157.   Ms. Vanka is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

22

158.    Ms. Vanka is a person with a disability because she has actual impairments – autoimmune dysfunction, Celiac disease, and irritable bowel syndrome – causing substantial limitations of her major bodily functions including her immune and digestive systems, because she has a record of impairment, and because Defendants regarded her as having an impairment.

159.    At all times relevant hereto, Ms. Vanka has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

160.    In April 2024, Ms. Vanka requested a reasonable accommodation for her disability – to work remotely from outside of Georgia to see healthcare providers when her disability flare ups were increasing – of which her supervisor was aware.

161.    Rather than accommodate Ms. Vanka, Defendants terminated her employment on May 13, 2024,

162.    Defendants' actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

163.    Defendants acted with malice towards Ms. Vanka.

164.    Additionally, and in the alternative, Defendants acted with reckless disregard for Ms. Vanka's federally protected rights.

165.   As a direct and proximate result of Defendants' intentional discrimination, Ms. Vanka has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including retirement benefits, all in an amount to be established at trial.

166.   Defendants' actions have also caused, and continue to cause, and will cause Ms. Vanka to suffer damages for emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

167.   Ms. Vanka is entitled to damages including back pay and lost benefits, front pay and/or reinstatement, compensatory and punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

### COUNT VII
### Violation of ADA – Interference

168.   Ms. Vanka incorporates by reference all the preceding paragraphs of the Complaint.

169.   At all times relevant to this action, Defendants were subject to the requirements of the ADA.

170.   Ms. Vanka is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

171.   Ms. Vanka is a person with a disability because she has actual impairments – autoimmune dysfunction, Celiac disease, and irritable bowel

syndrome – causing substantial limitations of her major bodily functions including her immune and digestive systems, because she has a record of impairment, and because Defendants regarded her as having an impairment.

172. At all times relevant hereto, Ms. Vanka has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

173. In April 2024, Ms. Vanka requested a reasonable accommodation for her disability – to work remotely from outside of Georgia to see healthcare providers when her disability flare ups were increasing – of which her supervisor was aware.

174. Defendants interfered with Ms. Vanka's statutory protected ADA rights by coercing, intimidating, threatening, harassing, and interfering with Ms. Vanka in the exercise or enjoyment of, or an account of having exercised or enjoyed, rights granted or protected by the ADA. 42 U.S.C. § 12203(b); 29 C.F.R. § 1630.12(b).

175. Specifically, Defendants interfered with Ms. Vanka's statutorily protected ADA rights by among other things, coercing Ms. Vanka to relinquish or forgo an accommodation to which she was entitled; intimidating Ms. Vanka from using accommodations for a known disability; subjecting Ms. Vanka to unwarranted discipline because she requested reasonable accommodation.

176.   As a direct and proximate result of Defendants' wrongful acts, Ms. Vanka has suffered and continues to suffer substantial economic and non-pecuniary damages.

177.   Defendants willfully and wantonly disregarded Ms. Vanka's rights, and its actions toward Ms. Vanka were undertaken in bad faith.

178.   Ms. Vanka is entitled to lost wages and benefits, front pay, compensatory damages, punitive damages, attorney's fees and costs, prejudgment interest, and any other relief available under the law.

## COUNT VIII
## <u>Violation of ADA – Retaliation</u>

179.   Ms. Vanka incorporates by reference all the preceding paragraphs of the Complaint.

180.   At all times relevant to this action, Defendants were subject to the requirements of the ADA.

181.    Ms. Vanka is and, at all times relevant hereto, was an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

182.    Ms. Vanka is a person with a disability because she has actual impairments – autoimmune dysfunction, Celiac disease, and irritable bowel syndrome – causing substantial limitations of her major bodily functions including her immune and digestive systems, because she has a record of impairment, and because Defendants regarded her as having an impairment.

183.    At all times relevant hereto, Ms. Vanka has been a qualified individual with a disability as that term is defined by 42 U.S.C. § 12111(8) and able to perform the essential functions of her job.

184.    In April 2024, Ms. Vanka reported disability discrimination and requested a reasonable accommodation for her disabilities.

185.    As such, Ms. Vanka engaged in protected activity under the ADA.

186.    Defendants retaliated against Ms. Vanka for her protected conduct by subjecting her to adverse employment actions including but not limited to: extending her performance improvement plan, giving her a negative performance review, and terminating her employment.

187.    The above-pled retaliatory conduct toward Ms. Vanka constitutes unlawful retaliation against her in violation of the ADA.

188.    Defendants acted in bad faith, willfully and wantonly disregarded Ms. Vanka's rights under the ADA and acted in reckless disregard for Ms. Vanka's rights under the ADA.

189.    As a result of Defendants' retaliatory conduct, Ms. Vanka has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

190.    Pursuant to the ADA, Ms. Vanka is entitled to damages including, back pay and lost benefits, front pay and/or reinstatement, compensatory damages,

punitive damages, attorney's fees and costs of litigation, and all other relief recoverable under the ADA.

## COUNT IX
### Violation of FMLA – Interference

191.   Ms. Vanka incorporates by reference all preceding paragraphs of the Complaint.

192.   Ms. Vanka was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

193.   By failing to reinstate Ms. Vanka at the conclusion of her FMLA leave, Defendants prevented Ms. Vanka from exercising the rights provided to her under the FMLA.

194.   Defendants' actions in interfering with Ms. Vanka's federal right to FMLA leave were committed with reckless disregard for her right to take up to 12 work weeks of leave for her serious health condition and in violation of the FMLA, 29 U.S.C. § 2615(a)(1).

195.   The effect of Defendants' actions has been to deprive Ms. Vanka of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her, solely because of her right to leave under the FMLA.

196.   As a result, Ms. Vanka is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorney's fees and costs of litigation.

197.   Ms. Vanka is also entitled to liquidated damages for Defendants' willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT X
## Violation of FMLA – Retaliation

198.   Ms. Vanka incorporates by reference all the preceding paragraphs of the Complaint.

199.   Ms. Vanka was an eligible employee with a serious health condition as that term is defined by the FMLA and the accompanying regulations, specifically 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.114.

200.   In failing to reinstate Ms. Vanka and terminating Ms. Vanka's employment, Defendants retaliated against Ms. Vanka for exercising her right to take leave as provided under the FMLA.

201.   Defendants' actions in retaliating against Ms. Vanka for exercising her rights under the FMLA were committed with reckless disregard for her right to be free from discriminatory treatment on account of her exercise of her rights under the FMLA, specifically 29 U.S.C. § 2615(a)(2).

202.  The effect of Defendants' actions has been to deprive Ms. Vanka of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due her, solely because of her exercise of her rights under the FMLA.

203.  As a result, Ms. Vanka is entitled to both equitable and monetary relief for Defendants' violation of the FMLA, specifically 29 U.S.C. § 2617(a)(1)(A) and (B) – including, but not limited to, back pay, front pay or reinstatement, attorney's fees and costs of litigation.

204.  Ms. Vanka is also entitled to liquidated damages for Defendants' willful violation of her rights under the FMLA, 29 U.S.C. § 2617(a)(1)(A)(iii).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and that the following relief be granted:

(a)    Judgment in Ms. Vanka's favor and against Defendants under all counts of this Complaint;

(b)    An order that Defendants make Ms. Vanka whole by providing for her out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, taking into account all raises to which Ms. Vanka would have been entitled, together with interest thereon,

all in an amount to be proven at trial;

(c)    Grant to Ms. Vanka compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Ms. Vanka's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

(d)    Grant to Ms. Vanka punitive damages in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendants for its conduct toward Ms. Vanka and deter Defendants from similar conduct in the future for Defendants' willful and intentional violations of federal law;

(e)    Grant Ms. Vanka liquidated damages for Defendants' willful violations of the FMLA.

(f)    Grant to Ms. Vanka a trial by jury on all issues so triable;

(g)    Grant to Ms. Vanka to reasonable attorney's fees and reasonable expert witness fees together with any and all other costs associated with this action; and

(h)    Grant such additional monetary and equitable relief as the Court deems proper and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**LEGARE, ATTWOOD & RAGAN, LLC**

**Cheryl B. Legare**
Georgia Bar No. 038553
cblegare@law-llc.com

125 Clairemont Ave, Suite 515
Decatur, GA 30030
Tel: (470) 823-4000
Fax: (470) 201-1212

Counsel for Plaintiff